UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
CAPITAL VENTURES INTERNATIONAL, )   No. C02-0682L
                               )
            Plaintiff,         )
                               )   ORDER GRANTING PLAINTIFF'S
     v.                        )   MOTION TO MODIFY MEANS OF
                               )   PRODUCING ELECTRONIC
NETWORK COMMERCE, INC., *et al.*, )   DOCUMENTS
                               )
            Defendants.        )
_____)

        This matter comes before the Court on "Plaintiff's Motion to Modify Prior Order Regarding Production of Unconverted Electronic Documents." Dkt. # 132. Plaintiff seeks the production of certain native data files (rather than the hardware from which they were recovered) and an order directing defendants to cooperate in any future discovery disputes. Despite having rejected plaintiff's proposals before this motion was filed, defendants now agree that plaintiff is entitled to the native data files and they do not oppose most of the relief requested in plaintiff's motion.

        On April 26, 2005, the Court entered a discovery order which noted, based on defendants' representations, that approximately 30% of defendants' electronic data had not been recovered from the servers and hard drives on which it had been stored during Network

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS

Commerce, Inc.'s operations.[1] Not knowing whether defendants had made any progress in accessing this data while plaintiff's motion to compel was pending, the April 26th Order provided, in part, that "[i]f defendants have not yet uploaded and incorporated all of the electronic documents into a usable format, they shall, within two days of the date of this Order, provide a declaration of counsel to that effect and identify the date by which they expect to have completed the conversion . . . ." Order Granting Plaintiff's Motion to Compel Initial Disclosures and Responses to Discovery Requests at 13. In response, defense counsel filed a statement indicating that the remaining 30% of the electronic data had not been processed and that defendants would not undertake that task because of the expense involved. Decl. of Counsel (Dkt. # 129) at ¶¶ 3 and 7. Given this exchange, the Court had the impression that 30% of defendant's electronic data had not been processed, that it was sitting on hard drives and servers in defendant's storage areas, and that it was not yet in a format that could be of use in the discovery process.

---

[1] In the context of plaintiff's underlying motion to compel, defendants had submitted the declaration of Fay N.T. Kelley to explain the status of the various data caches within the possession and control of defendants. That declaration noted in relevant part that:

> LMC began capturing and processing NCI's electronic data and converting it into upload files that could then be loaded onto a searchable "Concordance" database. . . .
> In July of 2004, LMC began work on extracting and processing the data contained on the 74 loose hard drives. The procedure of extraction, processing, and uploading the data on the hard drives was the same as that already described for the servers. In July of 2004, LMC provided a report to me summarizing the data extracted from the hard drives using the Encase software. The report alone exceeded 66,000 pages.
> Only e-mail data has been processed from the loose hard drives. No other files have been processed from the loose hard drives. We have been told that approximately 80 gigabytes of end-user files have not yet been processed from the loose hard drives.
> We estimate the approximately 30% of the data contained on the loose hard drives and 22 servers remains to be processed.

Decl. of Fay N.T. Kelley (Dkt. # 114) at ¶¶ 16, 19-21.

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS    -2-

Having again reviewed the underlying memoranda regarding plaintiff's motion to compel, the Court's orders, and the April 28, 2005, declaration of Brian Buckley, the Court finds that its understanding of the relevant facts was reasonable in light of defendants' statements and arguments. At no point did defense counsel mention that the "unprocessed" electronic data had, in fact, been recovered from the original hardware and was preserved in EnCase files that could easily be copied to a CD or other media. At no point did defendants make any effort to clarify what they meant by "unprocessed," even though it should have been clear that their definition was significantly different from that used by the Court and plaintiff. Defendants' carefully-drafted documents and unexplained silences misled the Court regarding facts that would have aided in the efficient resolution of the underlying discovery dispute.

Even after defendants revealed that their entire universe of electronic data had, in fact, been processed and was in a format that would have allowed an immediate and cost-effective transfer of responsive documents to plaintiff, defendants thwarted plaintiff's attempts to reach a reasonable resolution of this matter. Despite the fact that the Court had unequivocally ordered production of the "unprocessed" documents subject to any future claims of attorney/client privilege, defendants refused to make those documents available in their most accessible, least expensive form. Defendants' insistence on following the letter, rather than the spirit, of the Court's order is unacceptable in the circumstances presented here. Even a modicum of cooperation on defendants' part would have resulted in the production of the EnCase files rather than their unexplained and seemingly unjustified insistence that the hardware, and only the hardware, be produced. Plaintiff was forced to file this motion to compel the production of the EnCase files: only at that point did defendants drop their opposition to much of the relief requested.

From start to finish, defendants have engaged in sharp practices designed to delay

and increase the costs of the production ordered by the Court. For example (and putting aside the discovery practices which prompted plaintiff's underlying motion to compel):

-- defendants "produced" hardware to plaintiff in Vancouver, British Columbia, despite the fact that, as recently as January 2005, these hard drives and servers had been located in Seattle;[2]

-- defendants provided conflicting information regarding how many servers and hard drives contained the "unprocessed" data;

-- defendants demanded that plaintiff immediately approve their production in a foreign country and then berated plaintiff when they voiced the obvious objection less than 48 hours after the production was made;

-- defendants withdrew reasonable offers to provide additional access to the underlying data apparently for the purpose of punishing plaintiff for objecting to the Vancouver production;[3] and

-- defendants insisted on bringing the hardware from Vancouver to Seattle despite plaintiff's on-going attempts to reach a more sensible and cost-effective resolution of the dispute.[4]

---

[2] See Decl. of Fay N.T. Kelley (Dkt. # 114) at ¶ 15.

[3] Contrary to Mr. Buckley's assertion (E-mail from Brian Buckley to Duffy Graham, dated May 9, 2005, attached as Ex. 3 to the Decl. of Duffy Graham (Dkt. # 133)), defendants offered to provide copies of the "unprocessed" data after the Court ordered that the hard drives and servers be produced (E-mail from Kit Roth to Duffy Graham, dated May 3, 2005, attached as Ex. 1 to the Decl. of Duffy Graham (Dkt. # 133)). That offer was withdrawn when plaintiff objected to defendants' production of the hardware in Vancouver, British Columbia. E-mail from Kit Roth to Duffy Graham, dated May 5, 2005, attached as Ex. 1 to the Decl. of Duffy Graham (Dkt. # 133).

[4] Plaintiff noted that defendants' decision to transport the servers and hard drives from Vancouver was precipitous and correctly stated that "[b]ringing the hardware to Seattle likely will not resolve our major objection to what NCI has done, and is doing, in what appears to be a continuing

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS        -4-

1 Overall, defendants have proven themselves recalcitrant and uncooperative, such that the relief 2 sought by plaintiff, including the ability to demand that defendants utilize efficient production 3 methods and the production of native data from all of defendants' hardware, is both necessary 4 and appropriate.

It is therefore ORDERED that:

(1)     Paragraph (2) of the Order Regarding Production of Unconverted Electronic Documents (Dkt. # 130) is hereby modified, consistent with paragraphs (4) and (5) below, such that defendants need only make available to plaintiff pursuant to its requirements the 15 hard drives that defendants have identified as containing "dead" data and from which defendants have not extracted or uploaded any data.

(2)     Counsel are under a continuing obligation, "as officers of the court, to work towards the prompt completion of each case and to minimize the costs of discovery." Introduction to the Local Civil Rules of the Western District of Washington.  In addition, "[a]n attorney or party who without just cause fails to comply with any of the Federal Rules of Civil or Criminal Procedure, or [the local rules of this district], or who presents to the court unnecessary motions or unwarranted opposition to motions, . . . or who otherwise so multiplies or obstructs the proceedings in a case as to increase the cost thereof unreasonably and vexatiously, may, in addition to, or in lieu of the sanctions and penalties provided elsewhere in these rules, be required by the court to satisfy personally such excess costs, and may be subject to such other sanctions as the court may deem appropriate." Local General Rule 3(d).

Defense counsel's conduct to date has not satisfied these provisions: future failures

---

attempt either to delay discovery, to wring cost-sharing from Plaintiff beyond [what] the Court has required, or both." E-mail from Duffy Graham to Kit Roth, dated May 5, 2005, attached as Ex. 1 to the Decl. of Duffy Graham (Dkt. # 133).

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS        -5-

to produce responsive information in a prompt, cost-effective manner will result in significant monetary sanctions against counsel themselves, preclusive rulings, and/or the waiver of the attorney/client privilege. Defendants and their counsel are specifically directed to cooperate with plaintiff to ensure that full and complete responses to discovery, consistent with the Court's April 26, 2005, Order Granting Motion to Compel Initial Disclosures and Responses to Discovery Requests, are provided to plaintiff in the most efficient and expeditious manner. To the extent that the documents to which plaintiff is entitled can be provided in a means or manner that is plainly less expensive and/or more efficient than that set forth within the precise contours of the Court's orders, defendants shall not refuse to consider or execute the alternative production method simply because it has not been specifically ordered by the Court.

(3)     Toward the goals articulated in paragraph (2) above, within five days of the date of this Order, the electronic document and discovery consultants and vendors of both defendants and plaintiff shall meet, either in person or telephonically, to address the most inexpensive and most efficient means of producing electronic documents in compliance with this Court's orders. Each party shall bear the expense of having its own vendors, consultants, and/or attorneys participate in this meeting.

(4)     Defendants shall, within eleven days of the date of this Order, make available to plaintiff for copying the EnCase files containing all electronic documents and data imaged or otherwise extracted from the 4 servers and the 59 hard drives (*i.e.*, the 74 total hard drives less the 15 containing "dead" data) identified by defendants as containing their so-called "unprocessed" electronic documents. Plaintiff shall bear the expense of copying these files. In the alternative, defendants shall provide to plaintiff complete copies of the EnCase files containing all electronic documents and data imaged or otherwise extracted from the 4 servers and the 59 hard drives identified by defendants as containing their so-called "unprocessed" electronic documents within eleven days of the date of this Order. Should defendants opt for

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS         -6-

this alternative, plaintiff shall pay defendants' actual cost to provide such copies or $2000, whichever is less, and defendants shall copy the EnCase files on to clean, new hard drives.

(5)   Defendants shall, within eleven days of the date of this Order, make available to plaintiff for copying the EnCase files containing all electronic documents and data imaged or otherwise extracted from the 14 servers identified by defendants as containing their "processed" electronic documents.  Plaintiff shall bear the expense of copying these files.  In the alternative, defendants shall provide to plaintiff complete copies of the EnCase files containing all electronic documents and data imaged or otherwise extracted from the 14 servers within eleven days of the date of this Order.  Should defendants opt for this alternative, plaintiff shall pay defendants' actual cost to provide such copies or $1000, whichever is less, and defendants shall copy the EnCase files on to clean, new hard drives.

(6)   Production of the electronic data described in paragraphs (1), (4), and (5) above is compelled and involuntary.  The Court expressly finds that such production is a sanction imposed by the Court and does not constitute a waiver of the attorney-client privilege.  Any privileged material made available to plaintiff or its agents shall retain its privileged status and shall not be disclosed to any person or entity other than plaintiff's counsel and their agents.  Upon receiving notice that plaintiff intends to disclose one or more documents produced pursuant to this Order, defendants shall thereafter have twenty days in which to identify documents in the set over which defendants claim privilege.  Upon receipt of a privilege log regarding the documents over which defendants assert privilege, plaintiff's counsel shall promptly delete all electronic copies and destroy all hard copies of the identified documents in their possession or, within ten days of said notice, file a motion with this Court challenging the assertion of privilege.  If defendants do not assert the privilege within the twenty-day period, plaintiff's counsel may, consistent with any applicable protective order, disclose to any person or entity the documents not identified as privileged.

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS        -7-

1
2          DATED this 13th day of June, 2005.
3
                                    _____
4                                   Robert S. Lasnik
                                    United States District Judge
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ORDER GRANTING PLAINTIFF'S MOTION TO
MODIFY MEANS OF PRODUCING
DEFENDANT'S ELECTRONIC DOCUMENTS       -8-