UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
CAPITAL VENTURES INTERNATIONAL,　　) 　No. C02-0682L
　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　) 　ORDER GRANTING DEFENDANTS'
　　v.　　　　　　　　　　　　　　　) 　MOTION FOR PARTIAL SUMMARY
　　　　　　　　　　　　　　　　　　) 　JUDGMENT
NETWORK COMMERCE, INC., *et al.*,　 )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　 )
_____)

　　　　　This matter comes before the Court on "Defendants' Motion for Partial Summary Judgment or, in the Alternative, for Bifurcation" (Dkt. # 159) and "Plaintiff Capital Ventures International's Cross-Motion for Partial Summary Judgment" (Dkt. # 175). The parties disagree about the meaning and effect of a Settlement Agreement dated July 25, 2001, in which plaintiff released defendants from "any and all claims . . . liabilities . . . torts . . . suits . . . and sums of money . . . based upon the Contract" with the exception of the federal securities claims and the fraudulent inducement claim that were already asserted in this litigation. Defendants seek a summary determination that this release bars plaintiff's newly-asserted Washington State Securities Act ("WSSA") claims. Plaintiff seeks dismissal of all defenses based on waiver, release, or estoppel to the extent they rely on the July 25, 2001, Settlement Agreement.

　　　　　Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds as follows:

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT

(1) Although plaintiff barely mentions it, the Washington Supreme Court's decision in Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493 (2005), is one of the seminal contract interpretation cases in this state. Recognizing that "there has been much confusion over the implications of Berg [v. Hudesman, 115 Wn.2d 657 (1990)]," the Supreme Court took the opportunity presented by Hearst to warn against the use of extrinsic evidence to "show an intention independent of the instrument or to vary, contradict or modify the written word." Hearst, 154 Wn.2d at 502-03 (internal quotation marks and citations omitted).

> . . . Washington continues to follow the objective manifestation theory of contracts. Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties. We impute an intention corresponding to the reasonable meaning of the words used. Thus, when interpreting contracts, the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used. We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent. We do not interpret what was intended to be written but what was written.

Hearst, 154 Wn.2d at 503-04 (internal citations omitted). It is not yet clear whether the Supreme Court meant to exclude extrinsic evidence unless an ambiguity is found, but that is a reasonable interpretation of its statement that "the subjective intent of the parties is generally irrelevant if the intent can be determined from the actual words used." It is also in keeping with the conclusion in Hearst, that "[e]ven if the parties intended to require that agency remainder be calculated differently when strike losses affect agency expenses," such a mutual but unexpressed intent cannot alter the unambiguous terms of the contract. Hearst, 154 Wn.2d at 510.

(2) In Hearst, one party urged an interpretation of the contract that the Supreme Court found to be unreasonable since it would require the court to rewrite a contractual provision that was clear on its face. The same ruling applies here. The parties disagree regarding the meaning of the phrase "based upon the Contract" as used in paragraph 6 of the Settlement Agreement. Plaintiff argues that claims "based upon the Contract" includes only those claims seeking

1  contract-based remedies, i.e., contract claims like default, breach, and rescission. Defendants
2  argue that the phrase covers all claims for which the Contract is the basis or foundation.

3          The Court finds that plaintiff's interpretation is not reasonable. The phrase "based
4  upon the Contract" is clearly broader than "contract claims" or "claims sounding in contract."
5  Had the parties intended to preclude only those claims seeking contractual remedies (such as the
6  claims of default that apparently prompted NCI to make a settlement offer in the first place), the
7  release provision would have been limited to "contract obligations" and/or "contract claims."
8  Instead, "contract obligations" are identified as one of fourteen types of claims to be released,
9  along with "torts." It is virtually impossible to square the specific release of tort claims "based
10 upon the Contract" with plaintiff's proposed interpretation. The language chosen by the parties
11 indicates that they intended to release all claims, not specifically reserved, that arose from the
12 September 28, 2000, securities purchase agreement and related documents (the "Contract"). The
13 release therefore includes all claims, whether sounding in tort or contract, that existed because of
14 the Contract. Plaintiff's WSSA claims clearly fall within this category.[1]

15         The Court finds that only claims that were specifically reserved and claims arising
16 out of other interactions between the parties survived the Settlement Agreement. Plaintiff's
17 proposed interpretation of the phrase "based upon the Contract" is too narrow given the list of
18 released claims and the ordinary meanings of the words used.

19     (3) Even if the Court were to conclude that the intent of the parties cannot be determined
20 from the words used in the Settlement Agreement (Hearst, 154 Wn.2d at 504) or that extrinsic
21 evidence is admissible in the absence of ambiguity (Berg, 115 Wn.2d at 669), consideration of
22 the documents and testimony submitted by the parties leads the Court to the conclusion that

---

[1] As defendants correctly point out in their motion, "but for" the Contract, the state securities claims would not exist, statements in the Contract serve as part of the basis for the WSSA claims, and rescission of the Contract is the appropriate remedy for any WSSA violation. It is hard to imagine what the WSSA claims are "based upon" if not the Contract.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT    -3-

plaintiff released its WSSA claims.[2]  While it is true that defendants' original settlement proposal focused on their need to avoid the consequences of the imminent NASDAQ delisting, the scope of the settlement was established through discussions between the parties and there is no clear indication in any of the contemporaneous documents that defendants intended to leave themselves open to tort or securities claims that had not yet been asserted.  The letter dated June 26, 2001, on which plaintiff relies, was written in response to plaintiff's question regarding which of the then-existing claims would survive the release: it cannot fairly be read as an admission regarding the viability of unasserted claims.  Decl. of Todd Silverberg, Ex. F (Dkt. # 172).  To the extent the June 26th letter is ambiguous, any confusion regarding the scope of the proposed release should have been put to rest when defendants summarized the effect of the release as "you would continue to pursue any rights you may have under your security claim."  Decl. of Todd Silverberg, Ex. H (Dkt. # 172).  A continuation, in common parlance, involves an existing course of action, not the initiation of a new action.  Following certain oral negotiations, defendants provided another summary of the proposed settlement, this time stating that plaintiff would "[f]orego all claims against the company except the security related claims associated with [its] lawsuit."  Decl. of Todd Silverberg, Ex. J (Dkt. # 172).  Plaintiff did not challenge or contradict the express reference to this lawsuit as a means of identifying the claims that would not be subject to the release.

---

[2] Defendants' argument that paragraph 10 of the Settlement Agreement bars any and all consideration of extrinsic evidence is unpersuasive.  Paragraph 10 does not say, as defendants would have it, that a reviewing Court may not utilize extrinsic evidence when interpreting the agreement.  While such a provision, if clear, may be enforceable, paragraph 10 says only that the Settlement Agreement may not be interpreted orally, and that any such interpretation must be in writing signed by all parties.  The Settlement Agreement does not mention extrinsic evidence, nor is it reasonable to presume that the parties intended to preclude judicial interpretation of the document.  Simply by making this argument, defendants invite the Court to interpret paragraph 10.  This, under defendants' interpretation, the Court could not do, leaving this issue unresolved and unresolvable.  In effect, defendants would make the Settlement Agreement unenforceable if the parties did not agree on the meaning of each and every term.  Neither the language of paragraph 10 nor common sense compels such an unreasonable result.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT          -4-

Consistent with the discussions up to that point, defendants' first draft of the settlement agreement provided that only the security claims asserted in this litigation would survive the release. Plaintiff's Section 10(b) and Section 20(a) claims were specifically carved out of the release, which otherwise applied to all claims existing at any time on or before the date of settlement. The first draft even released portions of plaintiff's federal securities claims to the extent they arose from statements in the Contract. Decl. of Todd Silverberg, Ex. K (Dkt. # 172). At this point, plaintiff successfully argued that its existing fraudulent inducement claim should be carved out, that its federal securities claims should remain intact regardless of the source of the alleged misrepresentation, and that only claims based on the Contract were within the scope of the release. Decl. of Todd Silverberg, Ex. L (Dkt. # 172). If, as plaintiff now argues, this last change was meant to limit the scope of the release to only "contract claims" or "claims seeking contract remedies," it was ineffective. As discussed above, "based upon the Contract" is significantly broader than "contract claims" and plaintiff's interpretation does not make sense in light of the inclusion of "tort" claims in the list of claims that were released. There is no evidence that plaintiff actually told defendants what they intended by the phrase "based upon the Contract." Plaintiff made a drafting change that was consistent with the parties' prior discussions (including defendants' mid-July summaries of the deal). The change simply narrowed the scope of the release to only those claims arising out of the Contract, rather than all claims existing at the time the agreement was signed, an alteration to which defendants were willing to accede. To the extent plaintiff intended these changes to have other, more far-reaching effects, its intentions were unexpressed and cannot "be employed to emasculate the written expression of" the parties. U.S. Life Credit Life Ins. Co. v. Williams, 129 Wn.2d 565, 571 (1996).[3]

---

[3] The same can be said regarding plaintiff's edits to paragraph 7 of the Settlement Agreement. The "claims in the Complaint except for those claims not released as stated in Paragraph 4" is simply another way to say "Counts IV-VI." The alteration, when viewed objectively, has no substantive effect.

ORDER GRANTING DEFENDANTS' MOTION
FOR PARTIAL SUMMARY JUDGMENT             -5-

(4) Judicial estoppel against either party is not appropriate based on the record in this matter.

(5) RCW 21.20.430(5) does not prohibit parties from settling claims arising from a past sale of securities. To hold otherwise would preclude the amicable settlement of any claim arising under WSSA. The Court has not found, and the parties have not identified, any case law, public policy, or legislative pronouncement that would support such an unreasonable reading of the statute. WSSA does not, therefore, bar defendants' release defense.

(6) Given the Court's interpretation of the Settlement Agreement, defendants' alternative request for bifurcation is moot.

Only one reasonable inference can be drawn from the language of the Settlement Agreement, whether considered alone or in light of the extrinsic evidence provided by the parties. For all of the foregoing reasons, defendants' motion for partial summary judgment is GRANTED. Plaintiff's WSSA claims are barred by the Settlement Agreement and are hereby DISMISSED. Plaintiff's cross-motion for partial summary judgment is DENIED.

DATED this 25th day of May, 2006.

                                /s/ Robert S. Lasnik
                                Robert S. Lasnik
                                United States District Judge

---

If plaintiff intended the change to mean that plaintiff was free to amend its complaint to add new claims, such an intention was unexpressed and cannot reasonably be inferred from the words used by the parties.

The Court also notes that plaintiff's conduct following the execution of the Settlement Agreement supports the finding that plaintiff released its WSSA claims. This action was transferred from the Southern District of New York in March 2002 and yet plaintiff made no attempt to amend its complaint to add the WSSA claims until November 2005.